IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEBORAH ALFORD, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-05-3278 |
| GENESIS HEALTHCARE, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Deborah Alford ("Alford" or "Plaintiff") initiated this employment action against Defendant Genesis HealthCare Corp. ("Genesis" or "Defendant"),[1] seeking to hold it liable for five common law torts, including wrongful discharge, defamation, civil conspiracy, invasion of privacy, and intentional infliction of emotional distress. This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332 based on diversity of citizenship of the parties. Pending before this Court is Defendant's Motion for Summary Judgment on all counts. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.

BACKGROUND & PROCEDURAL HISTORY

The facts are viewed in a light most favorable to the Plaintiff as the nonmoving party. In November of 2003, Deborah Alford began working as a Registered Nurse at Caton Manor

---

[1] Defendant argues that the proper defendant should be Meridian HealthCare, Inc., a wholly-owned subsidiary of Genesis, because Meridian HealthCare, Inc. was Plaintiff's actual employer. (Def.'s Mem. Supp. Summ. J. n.1.) However, this issue is immaterial in light of this Court's ruling.

Nursing and Rehabilitation Center ("Caton Manor" or "the Center"), which provides nursing care to elderly and chronically ill patients, as well as patients recovering from substance abuse. According to her job description, Alford was an at-will employee. (*See* Toepfner Decl. Ex. A.)

The handling of controlled substances at the Center is regulated closely by federal and state agencies, including the Federal Drug Enforcement Administration and the Maryland Department of Health. In addition, Caton Manor requires its employees to follow extensive policies prepared by NeighborCare, the vendor from which Caton Manor purchases medications. (*See, e.g.,* Toepfner Decl. Ex. B.) Two of Alford's responsibilities as a nurse included administering medication to patients as prescribed by their physicians and filling out patient charts documenting all such administrations. Nurses must also enter proper information into the Omnicell, a computer-operated machine that dispenses medication in the event a nurse's medication cart does not have the prescribed drugs. The Omnicell is organized into separate compartments for the various narcotics, which must be accounted for at the end of each shift. Each nurse has a unique identification code and password to access the medications, and whenever medications are removed, the Omnicell produces a computer printout showing the nurse's name, the time, the amount of medication, and the patient's name.

Alford performed her duties without any major incidents in the first few months of her career with the Center. In March of 2004, she received her first performance appraisal from her supervisor, Mary Lou Frain. (*See* Frain Decl. Ex. A.) She was given mostly positive reviews. The only problem noted by her supervisor was unsatisfactory attendance, which Alford attributed to having to take care of a sick aunt. (*See id.*; Alford Dep., Vol. I, 141:19-142:4.) However, later that year, her performance deteriorated, and on May 3, 2004, Alford received her

2

first Disciplinary Notice in the form of a verbal warning for "not doing 24 hour chart checks and/or not doing them correctly and completely causing numerous med and transcription errors." (Toepfner Decl. Ex. D.)

A second incident occurred on September 20, 2004, when the Plaintiff commented to Scott Cary ("Cary"), the Evening Administrator at Caton Manor, that the medication she had taken for anxiety was making her woozy. (*See* Cary Decl. ¶ 3.) Cary reported this to Unit Manager Lisa Dieterich ("Dieterich"), who informed Alford that she would have to go home as long as she was impaired. Alford became belligerent, pointed a finger at Dieterich, and said "Your day is coming." (*Id.* ¶ 4.) Cary prepared a written report of the incident for Catherine Toepfner ("Toepfner"), the Director of Nursing. Alford eventually filed a complaint through the Employee Hotline alleging that Dieterich singled her out and wrongfully sent her home, but the Defendant found the complaint to be without merit.

On July 20, 2004, Plaintiff injured her back when she fell off a chair at work. She filed a standard incident report form, which was submitted to Caton Manor's insurance carrier for processing. After not receiving a response from her employer, Alford filed a claim with the Maryland Workers' Compensation Commission on October 10, 2004.

On November 23, 2004, a patient complained to Dieterich that he had not received his pain medication the previous night when Alford was assigned to care for him, and that she had tried to give him the wrong medication. (*See* Toepfner Decl. ¶ 19, Exs. G-H.) The patient's roommate corroborated the story and said that he, too, had not received his medication from the Plaintiff the night before. During her investigation into the matter, Dieterich checked the Omnicell, and she discovered a discrepancy in the amount of medication. The machine showed

3

that Alford had been the last person to access the Omnicell before the discrepancy occurred.

Dieterich, as the Unit Manager, then informed Toepfner, the Director of Nursing, of the incident.  As Toepfner was on vacation at the time and could not investigate the matter until she returned to work on November 29, 2004, she took a precautionary measure of denying Alford access to the Omnicell and her medication cart in the meantime.  When Toepfner returned to work, she began investigating the allegations immediately, reviewing the Omnicell's records, patient charts, and Dieterich's notes thoroughly.  She also spoke with other nurses who informed her that they noticed discrepancies when Alford handed them her medication cart at the end of her November 23 and 24 shifts.  (*See, e.g.,* Toepfner Decl. Ex. P.)  One nurse, Rossana Spaulding, added that Alford failed to "count" medications with her after handing over the cart on November 24th, a practice required by the Center. (Spaulding Decl. ¶ 4.)  Toepfner decided to issue another Disciplinary Notice and suspend Alford for three days as a result of the discrepancies in the cart and the Omnicell and for failing to administer the proper medications to two patients.

Upon further investigation, Toepfner found that Alford had committed additional errors beginning on November 9, 2004, such as failing to give proper dosages to patients and neglecting documentation procedures on several occasions.  Toepfner also learned that Alford had made threatening comments to Frain, her supervisor, about the Evening Administrative Manager, Scott Cary ("Cary") on December 2, 2004.  Alford had told her supervisor that she wanted to block in Cary's car and confront him because she was upset that he had hung up on her when she called in sick that evening. Based on all the results of the investigation, Toepfner, Joseph Fuchs, the Center's Administrator, and Betsy Kowalcheck of the Defendant's Human

Resources Department decided to terminate Plaintiff's employment. (Toepfner Decl. ¶ 34.) The three managers met with Alford on December 8, 2004, and informed her of their decision to discharge her. Alford did not dispute the allegations and in her deposition even admitted that she may have made the errors cited by Toepfner. (*See* Alford Dep., Vol. II, 48:11-21.)

After Plaintiff's discharge, Toepfner reported the medication errors to the Maryland State Board of Nursing ("Board"), as required by law.[2] The Board gave Alford the choice of facing possible disciplinary action or voluntarily enrolling in its rehabilitation program for nurses facing substance abuse or other illnesses. Alford chose to enter the rehabilitation program. In January of 2005, approximately one month after her termination from Caton Manor, she began working as a Registered Nurse for a long-term care facility in Baltimore, Maryland, called Future Care.

On November 9, 2005, Alford filed the instant lawsuit against Genesis HealthCare Corp., as the corporation in charge of Caton Manor, in the Circuit Court for Baltimore City.[3] Count One of the Complaint alleges that Genesis is liable under the theory of respondeat superior, Count Two is for wrongful termination, Count Three is for civil conspiracy, Count Four is for defamation, Count Five is for invasion of privacy false light, and Count Six is for intentional infliction of emotional distress. The Defendant removed the case to this Court on December 7,

---

[2] Under Maryland law, "[i]f a nursing administrator, registered nurse, licensed practical nurse, or certified nursing assistant knows of an action or condition that might be grounds for action under §§ 8-316 or Subtitle 6A of this title, the nursing administrator, registered nurse, licensed practical nurse, or certified nursing assistant shall report the action or condition to the Board [of Nursing]." Md. Code Ann., Health Occ. § 8-505 (LexisNexis 2006).

[3] It is unclear from the record exactly what role Genesis plays in the management or ownership of Caton Manor. The Complaint merely says that Caton Manor "is a subsidiary of Genesis and has its principal place of business in Baltimore City, Maryland." (Compl. ¶ 3.)

2005, pursuant to 28 U.S.C. § 1441 on diversity of citizenship grounds, because Genesis is a Pennsylvania corporation with its principal place of business in Pennsylvania and Alford is a resident of Maryland. Defendant filed the pending Motion for Summary Judgment on August 31, 2006 (Paper No. 25).

## STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold*, Inc., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). However, the opponent must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). "Once the movant has established the absence of any genuine issue of material fact, the opposing party has

an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)).  Rule 56(e) also requires that "affidavits submitted by the party defending against a summary-judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'"  *Id.* (quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2740, 399 (3d ed. 1998)).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment.  *Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md.  2001) (citations omitted).  Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

ANALYSIS

Defendant Genesis HealthCare Corp. ("Genesis") has moved for summary judgment on all counts of the Complaint.  Count One merely requests that the Defendant be liable for the actions of its agents under a theory of respondeat superior and does not state a separate cause of action.  The remaining counts of the Complaint, each purporting to state a common law tort claim, will be discussed separately.  As the jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332, Maryland substantive law applies.  *Erie R.R. Co. v.*

*Tompkins*, 304 U.S. 64, 78 (1938).

      **A.**      **Count Two: Wrongful Termination**

Count Two of the Complaint alleges that Plaintiff Deborah Alford ("Alford") was wrongfully discharged. It is well established in Maryland that "at-will employment 'can be legally terminated at the pleasure of either party at any time.'" *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 182 (Md. 1989) (citation omitted). However, the Maryland Court of Appeals created an exception to this rule in *Adler v. American Standard Corp.*, 432 A.2d 464 (Md. 1981), when it established a cause of action for abusive discharge. The tort of abusive discharge in Maryland requires a showing that the plaintiff was terminated in contravention of a "clear mandate of public policy." *Id*. at 473. The Court of Appeals has narrowly interpreted what constitutes a clear mandate of public policy, finding for employees primarily when they were discharged for refusing to act unlawfully, exercising a statutory duty, right, or privilege, and performing an important public function. *See Makovi*, 561 A.2d at 182.

Plaintiff contends that she was discharged "solely" because she "filed a worker's compensation claim. . . ." (Compl. ¶ 23.) It is true that "[d]ischarging an employee *solely* because that employee filed a worker's compensation claim contravenes the clear mandate of Maryland public policy." *Ewing v. Koppers Co.*, 537 A.2d 1173, 1175 (Md. 1988) (emphasis added). However, Plaintiff has offered no evidence that her termination was "solely" or even remotely related to her filing a claim for worker's compensation other than to suggest that she was "accused of stealing narcotics and consequently terminated" after she filed the claim. (Compl.¶ 22.) On the contrary, there is abundant evidence that Alford was discharged because she mishandled patient medication (Toepfner Dep. 55:18-21; Toepfner Decl. Ex. P), failed to fill

8

out necessary patient documentation (*Id.* at 101:5-14; Wilhelm Decl. ¶ 4), and made threatening comments to her supervisors (Toepfner Decl. ¶ 33; Frain Decl. ¶ 5).  Plaintiff herself even testified that she "may have [made] some errors" which contributed to her termination.  (Alford Dep., Vol. II, 48:11-21.)  Finally, the Maryland Board of Nursing made a determination that Plaintiff had to choose between rehabilitation or disciplinary action as a result of her misconduct on the job.  (*See* Def.'s Mem. Supp. Summ. J. Ex. 12.)  It is clear from the record that Plaintiff was discharged because she violated Defendant's procedures, creating a serious risk of harm to patients.

Thus, there are no genuine issues of material fact as to Plaintiff's wrongful termination claim and Defendant is entitled to judgment as a matter of law.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to Count Two.

### B.     Count Four: Defamation

Count Four of the Complaint purports to state a claim for defamation.  Specifically, Plaintiff alleges that Genesis administrators made false statements to the Maryland State Board of Nursing that she had stolen medications from Caton Manor.  (Compl. ¶ 30.)  In order to succeed on her defamation claim, she must show "that the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that [she] thereby suffered harm."  *Gohari v. Darvish,* 767 A.2d 321, 327 (Md. 2001) (citation omitted).  It is clear from the record before this Court that the defamation claim cannot survive summary judgment.  Catherine Toepfner, Director of Nursing, was merely exercising her statutory duty when she reported the incident involving the Plaintiff and the missing medication to the Board of Nursing.  (Def.'s Mem. Supp. Summ. J. 25-26.)

9

It is well established under Maryland law that a defendant is entitled to a qualified privilege[4] and "will not be held liable for a defamatory statement if the person is acting 'in furtherance of some interest of social importance, which is entitled protection.'" *Gohari*, 767 A.2d at 327 (quoting *Woodruff v. Trepel*, 725 A.2d 612, 617 (Md. Ct. Spec. App. 1999)). The strong public interest in favor of regulating the conduct of health care professionals is codified in the Maryland Code. Of particular relevance to this analysis, section 8-505 of the Health Occupations title requires that a nursing director like Toepfner "*shall report*" to the Board of Nursing any "action or condition [of a nurse] that might be grounds for [disciplinary] action" by the Board. Md. Code Ann., Health Occ. § 8-316 (LexisNexis 2006) (emphasis added). Actions or conditions that must be reported include, for example, a nurse failing to complete legally required patient records or working under the influence of a narcotic. *Id*. § 8-316. To encourage compliance, individuals who report such incidents under section 8-505 are guaranteed immunity. *See id.*; Md. Code Ann., Cts. & Jud. Proc. § 5-709 (LexisNexis 2006).

In this case, Catherine Toepfner conducted a thorough investigation into the incidents at Caton Manor on November 23, 2004 when two of the patients under Alford's care failed to receive their medication and discrepancies in the Omnicell's drug count were discovered. Through her investigation, she discovered that Alford withheld prescribed medication from two

---

[4] Two privileges actually exist: absolute and qualified or conditional. "An absolute privilege is one which provides complete immunity" and applies primarily to statements made during the course of judicial and quasi-judicial proceedings. *Gohari*, 767 A.2d at 328. Absolute privilege applies regardless of the state of mind of the speaker, whereas a qualified privilege is only extended to those statements made without malice. *McDermott v. Hughley*, 561 A.2d 1038, 1043 (Md. 1989). As the statements at issue in this case were made pursuant to a statutory duty rather than as part of a judicial proceeding, Defendant would be entitled to a qualified privilege.

patients, attempted to give one of them the wrong medication, failed to fill out patient charts, and failed to enter the right information into the Omnicell  (*See* Toepfner Decl. ¶ 19, Exs. G-H; Toepfner Dep. 55:18-21, 101:5-14.)  Pursuant to section 8-505 of the Health Occupations title of the Maryland Code, Toepfner had a *duty* to report this information to the Board of Nursing; she did not do so recklessly or negligently, as alleged in the Complaint.  Because Toepfner receives statutory immunity for her actions, Defendant is entitled to a qualified privilege that will defeat Plaintiff's claim for defamation.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to Count Four.

      **C.**      **Count Five: Invasion of Privacy–False Light**

Count Five purports to state a claim for false light, an invasion of privacy tort recognized in Maryland, relying on essentially the same facts as in her defamation claim.  Although the elements of a false light claim[5] are slightly different than those of a defamation claim, "the same considerations and legal standards apply."  *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (quoting *Phillips v. Washington Magazine, Inc.*, 472 A.2d 98, 101 n.1, *cert. denied*, 300 Md. 89, 475 A.2d 1201 (1984)).  Thus, Defendant argues that it is protected by the same privilege that defeats its defamation claim.[6]  (Def.'s Mem.

---

    [5]  In order to succeed on a claim for false light, a plaintiff must show "(1) that the defendant gave publicity to a matter that places the plaintiff before the public in a false light; (2) that a reasonable person would find that the false light in which the other person was placed highly offensive to a reasonable person; and (3) that the defendant had knowledge of or acted with reckless disregard as to the falsity of the publicized matter and the false light in which the defendant placed the plaintiff."  *Mazer v. Safeway, Inc.*, 398 F. Supp. 2d 412, 431 (D. Md. 2005) (citing *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 319 (Md. Ct. Spec. App. 1995)*, cert. denied*, 669 A.2d 1360 (Md. 1996)).

    [6]  *See supra* Part B.

Supp. Summ. J. 24-26.)

It is clear that "[i]n Maryland, a court may grant summary judgment for the defendant on a false light claim if the defendant's statement is protected by a conditional or qualified privilege." *Id*. (citations omitted); *see also AIDS Counseling & Testing Ctrs.*, 903 F.2d at 1004. As Toepfner's statements to the Board of Nursing were protected by a qualified privilege arising out of her legal obligation under Maryland law, Alford has failed to present a genuine issue of material fact as to her false light invasion of privacy claim and Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to the false light claim alleged in Count Five

### D.   Count Six: Intentional Infliction of Emotional Distress

Count Six of the Complaint purports to state a claim for intentional infliction of emotional distress. In order to succeed on a claim of intentional infliction of emotional distress, Plaintiff must demonstrate four elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; (4) The emotional distress must be severe." *Mitchell v. Baltimore Sun Co.,* 883 A.2d 1008, 1024 (Md. Ct. Spec. App. 2005) (citations omitted). Maryland courts have cautioned that the tort of intentional infliction of emotional distress is to be used "sparingly" and only for "opprobrious behavior that includes truly outrageous conduct." *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 607 A.2d 8, 11 (Md. 1992). This Court has previously acknowledged that the tort "is rarely viable in a case brought under Maryland law." *Robinson v. Cutchin*, 140 F. Supp. 2d 488, 494 (D. Md. 2001) (citing *Bagwell v. Peninsula Regional Medical Ctr.*, 665 A.2d 297, 319 (Md. Ct. Spec. App.

1995), *cert. denied*, 669 A.2d 1360 (Md. 1996)).

Plaintiff has clearly failed to meet the second element, as no reasonable jury would find that the actions taken by the administrators and managers at Caton Manor are in any way egregious. It is well established that conduct is deemed extreme and outrageous only when it goes "beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977) (quoting Restatement (Second) of Torts § 46 (1965)). As discussed above, Toepfner conducted a thorough investigation into the allegations that Alford had mishandled patient medication before she and other administrators decided to terminate Alford's employment, in a private setting, and she ultimately notified the State Board of Nursing.[7] She acted pursuant to statute and followed the protocols outlined in the Center's Employee Handbook. (*See, e.g.,* Toepfner Decl. Ex. V.) There is simply no evidence that any of the Defendant's agents at Caton Manor acted in an outrageous manner during the events giving rise to this lawsuit.

Even if Alford could prove each of the other elements, she has failed to create a genuine issue of material fact as to the second element and Genesis is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to Count Six.

**E.   Count Three: Civil Conspiracy**

Count Three of the Complaint alleges that Catherine Toepfner, Director of Nursing, Betsy Kowalcheck, the Regional Human Resources Manager, and Joe Fuchs,[8] the Administrator

---

[7] *See* supra Part C.

[8] The Complaint actually refers to a Joe Fush, but the Administrator's last name is in fact Fuchs. (*See* Fuchs Decl. ¶ 1.)

of Caton Manor engaged in a civil conspiracy to harm Alford. Genesis argues that Alford's claim must fail because civil conspiracy is not a separate cause of action. (Def.'s Mem. Supp. Summ. J. 33-34.) It is well established in Maryland that "civil conspiracy is not capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Mackey v. Compass Mktg.*, 892 A.2d 479, 485 (Md. 2006) (citations and internal quotation marks omitted). It is even considered "improper" to plead civil conspiracy in a separate count of a complaint as if it were a "cause[] of action independent of an underlying tort." *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 110 n.6 (Md. 2000). It is abundantly clear to this Court that Plaintiff has failed to present evidence sufficient to create a genuine issue of material fact as to each of the other common law torts named in her Complaint. As such, she cannot prove that she suffered a separate tortious injury, which is required to sustain a civil conspiracy claim. Accordingly, Defendant is entitled to judgment as a matter of law, and its Motion for Summary Judgment is GRANTED as to Count Three.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. A separate Order and Judgment follows.

Date: April 9, 2007                                  /s/
                                                     Richard D. Bennett
                                                     United States District Judge